With that, next case on the docket is In re the Marriage of Vaughn. Clause number 5-10-0366. And Mr. Kibler. Please the court. Counsel. I've said this before. It's never been true before, but I'm always hopeful. This may be the only time I'm actually under my allotted time. This is a very brief issue. This is a singular issue. And as such, I had not asked for an argument. Counsel did. So that's why I'm in fact here. Robert Vaughn and Karen Vaughn were married on December 18, 1993. This is Vaughn, the acolyte, filed for divorce in Williamson County, Illinois, on November 3, 2003. I went to hearing on second stage June 23rd of 2004. Most of the issues were settled by agreement. The two issues that were not settled by agreement, maintenance and child support, those issues were both tried to verdict. Maintenance was zero and child support was determined at $1,285. My client was and is at that time what was known as CITS, now known as Ameren CITS, and has been a union employee there for 40 years. One of the issues that the party settled at the time of hearing was that my client agreed to receive the marital pension with the exception that his wife was to receive a one-half of the interest accrued during the marriage. In exchange for receiving what he believed that she was receiving, less than one-half the marital ownership or the marital benefit of the pension during the time of the marriage. My client agreed to assume all $110,863.52 of the obligations of the marriage. He accepted all the liabilities. That had to do with the home, though, didn't it, and the mortgage? Most of it. Part of it, but off the top of my head, there were also credit cards and marital medical debts, and he assumed everything, lock, stock and barrel. But he did get the home. He did get the home. I don't believe there was any equity in the home. Okay. It was like $87,000? I forgot the number. The total amount of the debt was $110,000. Right. Okay. And also in that exchange, there were two personal injury actions, and she received both of those, lock, stock and smoke and barrel. The case was then tried to verdict, but because of time and delay of the trial court deciding the issue, the two issues that were in front of it, and in addition, the petitioner, which was Lance Blinken, their judgment had some kind of error in it, which was not something that I wanted to make a point out of, but they were concerned about it, and they came back and did an amended judgment. The final judgment on this was not rendered and signed until April of 2005, so some ten months later. During that interim time period, my client continued to pay into the pension insurance. Sometime after that, and the exact date is not clear in the record, his now ex-wife attempted to take out $78,000 from pension. After penalty, she was allowed to receive $45,099.45. My client was given notice of the fact that that had been taken out of his pension after the fact, after it had already done, and then he got a copy at that point in time. He went and got a copy of the quadra order. There was no issue that the quadra order, as prepared by Landon Blinken, was never forwarded or sent to either me or my client. And then when my client got it, he determined that the phrase, one half of interest accrued during the marriage, was changed to one half marital interest. My client then filed a pro se motion to have that construed or set aside by the court, and then he retained to me, and I came in, and we tried that to a contested hearing. That ruling went against him, and in that ruling, I believe that the judge who had originally handled the divorce by that time was no longer sitting on the bench, and Judge Lewis was now the one handling the case. He construed that marital interest and one half marital interest and one half interest accrued were the same language and refused to give my client any relief. Well, one of the things Judge Lewis did was go back to the transcript in which the agreement of the parties was recited. Yes, sir. And he quotes it in his docket entry. Yes, sir. And I don't know if that's an exact quote, but the quote is, on pensions, distributing the pension that was accrued during the marriage, the pension, not interest, the pension that was accrued during the marriage equally between the parties, and that that was acknowledged by your client to be his agreement on the record at that time. The word accrued there is a specific – and I go through in my brief with some definitional explanations. I understand, but in that quote, it's pension that was accrued, not interest. Well, the word accrued as applied there means to me and meant to my client the growth. And you have to look at this, not just at the little snapshot, but at what my client's intent was. Was there anything during this – and I haven't looked at the record. Yes, sir. Okay. But was there anything introduced into evidence at this hearing in which you were asking that the quadro be amended in writing, like exchange between the parties or whatever, showing that the agreement was only for the interest? Testimony. There's a great deal of testimony. My client was adamant in the hearing that that's what his intent was. That's the only reason why he accepted all the debt. That's the only reason why he allowed her to take the two personal injury actions. Okay. But there was no, for example, letters between the parties discussing settlement where you're calculating? It was agreed upon in the courtroom. But you understand what I'm saying? Yes. No, sir. It was agreed. We sat down to try it. The offer was made. We accepted it on the spot, did it, and then – so there wasn't any correspondence. Otherwise, we would have done that. Probably, I think that the absolute foolproof, linchpin piece of evidence that shows that my client's – what my client's intent was, Your Honor, was that from the time period of when the hearing took place and when the final judgment, those 10 months, he was heavily investing in this pension, which would have been stupid for him to have put money in something that he was going to lose on what he was doing. These were voluntary contributions. Yeah. He was putting everything he could put into that, and I think you'll find that in the record too. At best, for them. There's an ambiguity here, in which case it's a de novo review, and if the court doesn't wish to set aside what Judge Lewis has construed was the intent of the parties, I think that it – first of all, I think the court can, based upon the record that's here. At the time of the hearing, when you asked me about what the evidence was at the time of the hearing in front of Judge Lewis on the motion to set aside, my client was sexually adamant. This is what I did, this is why I did it, and this is what I thought we were agreeing to. When I asked Mr. Weaver's client how much money she'd received, and this is in the record, she didn't know. When I asked when she'd received it, she didn't know. When I asked what she had done with the money, she didn't know. And I had a paper trail on all this and was able to prove all this up from Ameren and from the records that I'd had from – banking records. And then when I proved up that she had in fact purchased the home, she didn't know that she'd done that. And then when I asked what the home – where the home was and where the money, because I was going to ask for an injunction to hold that until we got a ruling on it, she didn't know what had happened to the home because she didn't own it anymore, and that she didn't know what had happened to the money. It was just totally incredible. And then the only thing she knew at the hearing was this wasn't what she meant when I was arguing from some years before. The court's ruling as I read it wasn't really based on any of that anyway, though. It was based on an interpretation – on the transcript of the proceeding and his interpretation of what the agreement said. I think you're right. And I think the court had to look at the evidence that was in front of it because on its face the language is, at worst for us, ambiguous because the phrases are not the same. The phrase accrued interest, interest accrued, marital interest, or benefit accrued, all of those things are different phrases. They have meanings of art. They have tax meanings. And the court just lumped that all into one meaning. And I think you're right. I don't think the court really gave credence to any of the testimony at the hearing, and I think he had to. Only if he found it to be ambiguous. Well, the language is right. He wouldn't consider parole evidence at all. You're exactly right. And the way I read it, he found that it was not ambiguous and that it meant to divide the 50-50 the whatever pension was earned during the marriage. That's what he did. You're exactly right. Okay. On its face, at worst for us, it's ambiguous. It is. It is. I think it's clear. In summary, my client is 62 years old. He has custody now of all these children. He's worked for Ameren Farms 40 years, and he can't retire. He's basically in an indentured servitude position because a sizable portion of his pension has been stripped out of it, and we're asking the court to do one of two things. Either to simply set the court's ruling aside and to construe it in the way that I'm asking the court to construe it, or at worst, to remand it, to say that there was an ambiguity and to have that part of this decision looked at and said that the parties did not have a meeting of the mind and go back to hearing on the issue of the pension and screwing all the facts of what she got and where the parties are at. Okay. Thank you, Mr. Kibble. Thank you. Mr. Weaver. May it please the court. Contrary, Your Honors, to all of the evidence and the record that has been presented to this honorable court, Mr. Vaughn wants this court to believe that the parties agreed to only divide interest that was accrued on the overall marital benefit of the pension and divide that by half simply because he now says that's the agreement. Whereas Mrs. Vaughn wants this court to accept the proposition that the parties met in court in June 2004, negotiated a settlement, put that settlement on the record just after negotiations, when it was fresh in everyone's mind what that negotiation was, what the agreement was, put that negotiation on the record and everyone acknowledged that was the agreement. And the agreement being that the parties were to divide one half of the marital interest in the pension, which is standard in matrimonial cases. I think that a brief look at the facts are very important here. This is a fact-based case. June 23, 2004, the parties show up in court for a second stage hearing. They appear before Judge Speroni. They negotiate a settlement, and then they go back into court to tell Judge Speroni that they've reached an agreement. Judge Speroni is very clear on the record. He says that counsel will put the agreement on the record and that everyone is to listen to make sure it is their agreement. Therefore, counsel for Mr. Vaughn recites the agreement into their record. Counsel for Mrs. Vaughn, at the conclusion of that recital, says to the court that he also believes that there is a pension. And very quickly, Mr. Kibler says, yes, that's true, there's a pension, and a quadruple will be entered. However, counsel for Mrs. Vaughn clarifies, and he says, on pension, distributing the pension that was accrued during the marriage equally between the two parties, distributing the pension that was accrued during the marriage equally between the two parties. Judge Speroni then asks both counsel if that was the agreement. Both counsels answered in the affirmative, and then asked Mr. Vaughn. He said it was his agreement, and Mrs. Vaughn, and she said it was her agreement. Counsel is correct that not all issues were decided on that day. In September 2004, they go before the same judge, Judge Speroni, to hear those contested issues. At that time, Judge Speroni says to the parties that they had reached an agreement prior, in June, and that that agreement would stand. At the end of that hearing, he has a conversation between Mr. Kibler and Mr. Mike Fiello, who was representing Mrs. Vaughn at the time, to inform him that he would be looking to the transcript of the agreement from June, because he wanted something in writing regarding what the agreement of the parties was, because by that time, there was nothing in writing, only the oral contract between the parties. Mr. Kibler said to the court, that's fine, Your Honor, the agreement is not complicated. He's correct. The agreement was not complicated. It was one half the marital portion, standard in matrimonial cases, not this tortured one half the interest accrued on the account during the marriage. I don't even know how you calculate that. And if that was the agreement, we can assume that there would be something in the judgment to reflect that, that counsel for Mr. Vaughn would have made sure, because it's not a standard agreement. Thereafter, Judge Ferroni issued a ruling on the contested issues, and on December 1st, a judgment was entered. Learned counsel is correct that an amended judgment was then entered thereafter in April 2005. Now, the appellant makes a big issue about not getting notice of these documents that were entered. The record is silent on what occurred prior to the entrance of those, the entry of those documents. However, the record is not silent regarding a proof of service that was filed with the court, saying after the entry of the documents on April 26th, 2005, which was the amended judgment signed by Mr. Fiello and signed by Mr. Kibler, three quadros were entered on the same day. A proof of service was filed with the Circuit Court of Williamson County on May 5th, saying that Mr. Fiello had sent, on May 3rd, the amended judgment and the three quadros to Mr. Kibler's office. Also, the record is clear that on May 9th, Mr. Vaughan received a letter from Amherst CITS informing him that a distribution had been made, according to the quadro, from one of his pension accounts, and he also had a conversation with his wife regarding that distribution and her intent to buy a home. However, it's not until three and a half years later that Mr. Vaughan finally takes some action on what he claims is not his agreement, when he files his motion to correct the quadro. There's also a lot being made of the fact that he continues to pour money into these pensions. One half of the marital interest was from the date of the marriage until the date of divorce, which was December 1st, 2004. All three quadros are clear that the only money that Mrs. Vaughan is entitled to are between those dates. Nothing after December 1st, 2004 is due her, and she hasn't received anything after that date. Learned Counsel wants this court to believe that his client continually pours all this money in that somehow Mrs. Vaughan is getting her hands on. So that could have only been from September 2004 to December 1st? The trial was September? The trial was September. The agreement was in April 2004. So from April to December would be the time period that contributions were continuing to be made? Possibly, yes, Your Honor. Because the quadro is all the cutoff dates, December 1st, 2004. Right. The cutoff date is the date of judgment for the divorce. Original judgment. Yes, the original judgment, Your Honor. So the issue here is one of contract interpretation. And whether or not the judgment, which incorporates the oral settlement agreement between the parties, whether it reflects the intent of the parties, the court's first responsibility is to look to that document on its own. And that standard of review is de novo. Illinois law is clear that the court should adopt an interpretation which gives effect to all the language in the contract, should look to the intent from the contract in its entirety and not one clause standing alone, that each provision was inserted deliberately and for a purpose. The court cannot place a construction on that contract that is contrary to its plain meaning. And a phrase is not ambiguous just because the parties do not agree on what it means. The language in this document is not ambiguous. It is clear. The language in paragraph B-7 of the amended judgment is plaintiff shall be entitled to one half of the interest accrued during the marriage in defendant's retirement accounts. The key phrase there is interest accrued in the retirement accounts. So we need to look to that provision. In the preposition, it connects the two phrases interest accrued to retirement accounts. In this context, the only definition of in that makes sense is belonging to, meaning that the accrued interest or interest accrued belongs in the retirement accounts. It's an overall package. It's the overall benefit of the account. In order to place an interpretation that Mr. Vaughan wants on this contract, you have to change the word in to on, interest on an account. That's an interest on principle, which is a standard phrase. So again, it's in versus on. Further, and I believe a stronger argument in regards to the four corners of the document, is that everywhere in the property section, which is section B, the word interest denotes ownership, denotes a marital interest. Paragraphs B-2, B-4, B-5. Property acquired during the marriage shall be the sole property of plaintiff, and defendant shall have no further right, title, or interest. Everywhere in this document, the word interest is used to mean ownership or a marital interest. Defendant shall assign his interest in the 1997 card to plaintiff. Again, marital interest. It is contrary to the rest of the contract that in this one provision standing alone, interest all of a sudden means some vague percent of an amount of money that is due to my client. However, if this Court finds that this document is vague, which I believe the lower court actually made a finding that the judgment was vague, and that's why Judge Lewis allowed extrinsic evidence, allowed testimony, and went back to the record, which was appropriate to do so. At any point in the record where that was addressed, did Judge Lewis say, you know, I'm finding that the contract is ambiguous, therefore I'm going to allow oral evidence? No. I mean, usually, you know, at that point, there's an objection. And then the judge says, well, I find it's ambiguous, but we don't really see that. Everybody just put their evidence in.  Everyone just kind of put their evidence in. But I believe based on his ruling where he talks about intent, I think that it's clear that he had to have found that the contract was ambiguous or else he wouldn't have considered the parole evidence. Including the transcript? Including the transcript. And the evidence is pretty voluminous, Your Honor, regarding what the party's intent is. Now, in this, the issue of intent, the standard of review is manifestly vague, and that should not be disturbed unless it is clear that it goes against the evidence. The record is very clear regarding the oral agreement between the parties. You cannot get any clearer than what Mr. Fiello said, distributing the pensions that was approved during the marriage. The word accrued means what was gained overall. There's no mention of the word interest. Nowhere in that statement. Both parties agreed. There's never been a challenge to the language of judgment, amended judgment, or three quadros until three and a half years after the fact. Plus, it takes another year and three months to even bring that motion up for a hearing. Mr. Vaughn claimed in that hearing that he had only agreed to this because he had accepted all of the debt in the marriage. But again, as it was pointed out, he also got most of the benefit of that debt. However, what he fails to inform the court is that in the hearing on the other issues regarding maintenance, that was his exact same argument for why Mrs. Vaughn should not get maintenance was because he had accepted all the debt. At no time did he mention the pension in that hearing. He was informed of what was happening. I think it's clear what the intent of the parties is. The lower court's decision is not against the management's way to the evidence, and this court should affirm. Thank you. Thank you. Mr. Kibler, any rebuttal? It was not argued at all that the quadros at the It was not argued at the motion hearing that we had contested evidence on that the quadros were sent to my office. There was no testimony that those things were sent to me. The only thing that was sent to my office was the judgment. And I'm not sure what counsel is talking about, proof of service, just to come to me because it simply did not. There was no argument about that whatsoever. What he said, what counsel just said to you that was absolutely right, is that it is done all the time in second stage hearings that routine pension quadro agreements are made, and the parties equally divide marital pensions. And I've done it thousands of times in 30 years of practice. And it's usually done that way. What is not done is that one party, short of the other party being disabled, assumes voluntarily all the marital debt. And that's what happened here, and that's the evidence that I think the court can hang their hat on is why would this man agree to take all of the marital debt? And the reason why he did, I think, is very clear from the testimony that Judge Lewis allowed. And I think the reason he allowed that testimony was that, as the court picked up on, there is ambiguity in the language because the language doesn't match up. And for all those reasons, I ask that the court either reverse or remand. Okay. Thank you both for your briefs and your arguments. We'll take this matter under advisory.